UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

GERALD GARSON,

    Petitioner,

-against-

KENNETH PERLMAN, Superintendent, Mid-State Correctional Facility,

    Respondent.

-------------------------------------------------------x

CV 07 3197

COGAN, J.

AZRACK, J.

PETITION PURSUANT TO 28 U.S.C. § 2254

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 02 2007 ★
BROOKLYN OFFICE

PLEASE TAKE NOTICE that, upon the accompanying affirmation, the accompanying exhibits, the accompanying memorandum of law, and all prior papers and proceedings in the courts of the State of New York, petitioner GERALD GARSON will move this Court, as soon as counsel may be heard, at the United States District Courthouse located at 225 Cadman Plaza East, Brooklyn, New York, for an order granting relief, pursuant to 28 U.S.C. § 2254, on the ground that he has been denied bail pending appeal in violation of the Eighth and Fourteenth Amendments of the United States Constitution, and granting such other and further relief as the Court may deem just and proper.

                                                   JEREMY GUTMAN
                                                 251 East 61st Street
                                                 New York, New York 10021
                                                 (212) 644-5200
                                                 *Attorney for Petitioner*
                                                 *Gerald Garson*

Dated: New York, New York
August 1, 2007

To: Kenneth Perlman
*Respondent*

District Attorney, Kings County
*Attorney for Respondent*

Attorney General of the State of New York
*Attorney for Respondent*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
GERALD GARSON,

        Petitioner,

  -against-

KENNETH PERLMAN, Superintendent,          AFFIRMATION
Mid-State Correctional Facility,

        Respondent.
----------------------------------------------------------x

    JEREMY GUTMAN, an attorney duly admitted to practice before the courts of the State of New York, affirms under the penalty of perjury that the following statements are true:

    1.    I represent petitioner Gerald Garson in the present matter.

    2.    This affirmation is submitted in support of Garson's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the ground that he has been arbitrarily and unreasonably deprived of bail pending appeal in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

    3.    Garson, a former Justice of the Supreme Court of the State of New York, is nearly 75 years old, suffers from a heart condition and other ailments, and underwent two operations, followed by six months of chemotherapy, for recurring cancer of the bladder that was detected during the year prior to his trial in 2007. From the time of his indictment, in May of 2003, for non-violent offenses relating to his conduct as a public

official, until his sentencing on June 5, 2007, he was at liberty pursuant to bail in the amount of $15,000, and faithfully attended all court proceedings, including every day of a 5-week trial. His appeal will raise numerous, substantial issues, all of which hinge on the unique facts and circumstances of this case and none of which involve claims that are foreclosed by controlling precedent. Particularly in view of Mr. Garson's age and health, his current incarceration poses the possibility that he could die in jail before an appellate court has an opportunity to review those issues and determine whether his conviction and sentence were fair and just.[1]

    4.    By a judgment of the Supreme Court of the State of New York, Kings County (Berry, J.), entered on June 5, 2007, in the case of *People v. Gerald Garson*, Kings County Indictment Number 5332/2003, Garson was convicted of bribe receiving in the third degree [New York Penal Law § 200.10](one count), a D felony, and receiving reward for official misconduct in the second degree [Penal Law § 200.25](two counts), an E felony, and sentenced to indeterminate terms of imprisonment of one to four years, one to three years, and one to three years, to be served consecutively. Garson was acquitted of four of the counts on which he was tried, and two other counts were dismissed on the People's motion before the case was submitted to the jury.

---

[1] Such a result would fulfill the unseemly threat, issued by the District Attorney through the news media shortly after a verdict was rendered, warning that, if Garson did not assist the District Attorney in an unrelated investigation (as to which Garson in fact had no information), he would face "jail for the rest of his life." *New York Law Journal*, April 23, 2007 [Exhibit P, attached to this affirmation]. *See* ¶ 13, *infra*.

5.  Notwithstanding widespread media coverage suggesting, erroneously, that the "bribe receiving" charge against Garson entailed receiving money in exchange for "fixing" matrimonial cases, that charge was not based on any such allegation; rather it was based on the allegation that, in exchange for "meals, beverages, loans, and cigars"[2] given by Paul Siminovsky (an attorney who appeared regularly before him and who had become a close friend), Garson gave Siminovsky *ex parte* advice about pending cases, assigned Siminovsky to serve as a law guardian for children involved in custody proceedings, granted the attorney's requests for adjournments, allowed "access" to his robing room, and treated Siminovsky with "more courtesy" than he "would treat many other lawyers appearing before him." *See* Indictments 3515/2003 and 3552/2003 [attached as Exhibit F to this affirmation] and "bill of particulars" letters of Kings County Assistant District Attorney John Dixon, dated September 19, 2003, and October 3, 2003 [Exhibit G].

6.  One of the two counts of receiving reward for official misconduct of which Garson was convicted was based on his receipt of the box of cigars supplied by the District Attorney's Office to Siminovsky, who was cooperating against Garson as part of

---

[2] At trial, there was testimony about a single loan, in the amount of $150, that Siminovsky offered when Garson indicated, while the two men were having lunch, that he would not be able to get to an ATM that day, and which Garson repaid the very next day. The evidence concerning "meals" and "beverages" related to Siminovsky paying the check on the frequent occasions when the two men dined together in public restaurants near the Kings County Courthouse, where they were often joined by other judges and by court personnel. The only cigars Siminovsky was shown to have given to Garson consisted of a single box that was provided to Siminovsky by the District Attorney's Office after he agreed to act as an agent of that Office and which Siminovsky placed in a drawer of Garson's robing room desk.

3

a plea bargain that allowed him to avoid prosecution for crimes he had committed with other individuals (for which he would have faced a sentence estimated at three to twenty years) and to receive a recommendation of no jail time for the one misdemeanor to which he was required to plead guilty. The theory of the prosecution was that the cigars were understood by Garson to be a "reward" for violating ethical prohibitions applicable to judges (New York's "Rules of Judicial Conduct") by giving Siminovsky *ex parte* advice about a pending case. The other count of receiving reward for official misconduct was based on the theory that Garson accepted one thousand dollars in cash – also supplied to Siminovsky by the District Attorney's Office – as a fee for referring Siminovsky to two clients who had retained him four and five months earlier.

7. The media reports suggesting, erroneously, that Garson had been charged with offenses based on the far more serious allegation that he accepted bribes for "fixing" cases did not occur by accident, but reflected an orchestrated effort by the Kings County District Attorney's Office. Thus, on April 24, 2003, the District Attorney issued a press release stating that Garson had been arrested for "accepting gifts to fix divorce cases." [Exhibit J]. On May 22, 2003, the District Attorney issued a press release stating that Garson had been indicted for "receiving rewards in order to fix divorce cases" [Exhibit K], even though, as discussed in paragraph 5 above, the indictment contained no allegation that Garson "fixed" any case. Following the issuance of those press releases, numerous newspaper and television reports misinformed the public that Garson had been accused of "fixing cases" in exchange for bribes.

4

8.  During a court appearance nearly a year after the dissemination of these misleading press releases, the original trial judge noted the discrepancy between the media coverage concerning this case and the actual charges in the indictment against Garson. Referring to a news program that showed a videotape, made by the District Attorney's Office, in which Siminovsky is seen handing cash to Garson (the conduct charged in the indictment as acceptance of a purported "referral fee," *see* ¶ 6, *supra*), the court observed that, "At each broadcast it seems to me that there seems to be an implication that what the tape is capturing is a cash bribe being given to Judge Garson for somehow fixing a case in front of him, but as I understand it, the District Attorney is not making any such claim about what the tape shows." District Attorney Charles Hynes responded: "That's absolutely correct, your Honor." (Transcript of proceedings, April 2, 2004, pp. 21-22 [Exhibit I]).

9.  The court went on to say, "There is a charge of bribe receiving pending against Judge Garson but it involves allegations regarding appointments made to a lawyer or access given to the attorney but not the fixing of any case, is that right?" The District Attorney responded, "That's correct, your Honor." *Id.* at p. 22.

10. Notwithstanding his acknowledgment that Garson was not charged with "fixing" cases in exchange for bribes, the Kings County District Attorney, as well as Assistant District Attorneys and investigators employed by his Office, subsequently participated in an edition of CBS's *48 Hours*, originally broadcast in 2004 (and re-broadcast several subsequent times), in which it was erroneously suggested that Garson

5

decided custody issues adversely to female litigants in exchange for cash bribes. On that broadcast, which featured a dramatic "re-enactment" of a matrimonial litigant, Frieda Hanimov, being outfitted with a tape recorder by the District Attorney's Office so that she could secretly record conversations in which a Brooklyn electronics dealer, Nissim Elmann, solicited money from her by claiming that it would be used to influence custody decisions by Justice Garson, one of the Assistant District Attorneys involved in Garson's prosecution says:

> "We're not talking about a traffic ticket here or someone jumping a turnstile. We're talking about corruption in the court system. And the pawns that are being played with here are children."

*48 Hours* synopsis, available at www.cbs.com [Exhibit M]. The Assistant District Attorney made these televised comments notwithstanding his Office's recognition that, in fact, there was no truth to Elmann's claims that the money he solicited from Hanimov and others would be used to influence decisions by Garson concerning custody or any other judicial determinations. In fact, at Garson's trial, the prosecution acknowledged that Elmann's claim that he had a corrupt relationship with Garson was false. When recorded conversations between Elmann and Hanimov were introduced, over defense objection, as "background" evidence, the trial court, with the prosecution's consent, advised the jury that:

> In fact, the People specifically and unequivocally stated that no evidence existed of any relationship or relation, whether it be social, professional, legal, or illegal between Nissan Elmann and the defendant Gerald Garson.

6

Trial transcript, p. 3500 [Exhibit H].

11.     Beyond simply misleading the public by suggesting that Garson was guilty of taking bribes to "fix" divorce cases, the *48 Hours* broadcast included the following comments by the Kings County District Attorney:

> "I saw the way the courts treated my mother when she was being beaten up by my father. I have a very special interest in making damn sure that kinda stuff doesn't continue," says [Kings County District Attorney] Hynes. "Frankly, I was shocked that it was going on at all. I thought that there had been significant changes in the way the courts acted towards women litigants and their kids."

*48 Hours* synopsis [Exhibit M]. These highly inflammatory remarks were made despite the fact that Garson's indictment did not charge him with mistreating "women litigants and their kids" in any way, and no evidence has been presented in any court showing that Garson adjudicated any matter as to any litigant other than on the basis of the law and the facts.

12.     The prosecutor's efforts to make it appear to the public that Garson was involved in corruption of a far more serious nature than that with which he was charged continued after his conviction. The subheading of the District Attorney's April 19, 2007, press release announcing Garson's conviction [Exhibit L] reads "TOOK CASH BRIBES AND GIFTS FROM AN ATTORNEY," even though Garson was neither charged nor convicted of taking "cash bribes." On Saturday, April 21, 2007, two days after the verdict in the present case, the Kings County District Attorney was quoted in the *New York Times*, in an article captioned "Key Verdict Does Not End Corruption Inquiry" [Exhibit

N], saying that Garson [and Clarence Norman, the former chairman of the Kings County Democratic Party] "could show that cash payments to the Democratic Party secured seats on the bench." Threatening to seek a harsh sentence that would cause Garson to die in jail if he did not provide such assistance to the prosecutor's office, the District Attorney is further quoted saying that, "Mr. Garson remains a potential source of information in the broader inquiry. I would hope over the weekend that he's going to be thinking about this . . . that he has a choice."

13.   An article published on the same date in the *New York Daily News* [Exhibit O] paraphrased the District Attorney's assertion that he would "seek the maximum 15-year sentence against Garson, 75, if he doesn't fess up to which judges paid to get on the bench." Again, on Monday, April 23, 2007, the *New York Law Journal* reported the District Attorney's comment that "the end game" of his Office's four-year probe into the buying and selling of judgeships was about to begin and that "Mr. Garson . . . hold[s] the keys to proving allegations that candidates have had to pay $50,000 or more to obtain judgeships, stories that have been around longer than you and me" [Exhibit P].

14.   Referring to these extrajudicial statements in the court below, counsel for Garson stated unequivocally that Garson has no personal knowledge whatsoever regarding the purchasing of judgeships, *see* May 2, 2007, letter of Michael S. Washor, Esq. [Exhibit Q] and no representative of the District Attorney's office has disputed that statement or offered evidence to the contrary in any forum. The defense also noted in the court below that, in making remarks to the media about allegations beyond those

contained in formal charges, the District Attorney was disregarding DR7-107 of the Code of Professional Responsibility, which prohibits attorneys from making extrajudicial statements that could reasonably be expected to affect judicial proceedings, see id., n. 2, and no representative of the District Attorney has ever disputed that assertion or made any effort to justify the statements made by the District Attorney to the press.

15. Immediately following the imposition of sentence on June 5, 2007, Garson filed a notice of appeal. He then moved in the Supreme Court of the State of New York, Appellate Division, Second Department, by an order to show cause, for an order, pursuant to New York Criminal Procedure Law § 460.50, staying the execution of the judgment of conviction and sentence and releasing him on bail pending determination of his appeal. The order to show cause, together with an affirmation of counsel, and four attached exhibits (identified as Exhibits 1 through 4), are attached as Exhibit C to this affirmation. That application discussed numerous issues that Garson contemplated presenting on appeal, and pointed to facts demonstrating that Garson posed no risk whatsoever of flight. Those facts included (1) that Garson was a 74-year-old[3] first-time offender suffering from a range of serious medical conditions, including a heart condition and recurring cancer of the bladder, that required ongoing and frequent medical assessment and treatment; (2) that he was a lifelong resident of New York City with extensive family and community ties who resided with his wife, a Judge of the Civil Court of the City of New York; and (3) that, in recognition of his faithful attendance at all court proceedings, including a five-

---

[3] Garson will be 75 years old on August 3, 2007.

9

week trial, the trial judge had permitted him to remain at liberty following his conviction without any increase of his $15,000 bail.

16. The application for bail pending appeal was randomly assigned to Hon. Edward D. Carni, Associate Justice of the Appellate Division, Second Department. Following a conference in chambers attended by counsel for Garson and counsel for the prosecutor on the afternoon of June 5, 2007, Justice Carni issued an interim stay of the judgment of conviction and sentence pending determination of the bail application, and directed that all further papers be filed by June 12, 2007. [Exhibit B]. The interim stay order continued Garson's bail at the previously-set amount of $15,000.

17. On June 11, 2007, the prosecutor filed an affirmation and a memorandum of law [Exhibit D] in opposition to the application. Although those papers asserted that Garson was a "flight risk," they alleged no facts at all in support of that contention. With regard to the appellate issues discussed in Garson's application, the People's papers offered counter-arguments, but pointed to no dispositive decision of a New York State appellate court, or any other court, that would foreclose a determination favorable to Garson.

18. The People also argued that Garson's application for bail should be denied because of the lengthy delay between his indictment in 2003 and his trial in 2007, even though "delay" is not included among the criteria governing a decision concerning bail pending appeal that are delineated in the applicable state statutes. The People failed to note that the "delay" in this case was caused primarily by the prosecution's determination

10

to appeal the trial court's dismissal of several counts of the indictment – first to the Appellate Division, Second Department, and, following that Court's affirmance, to the New York Court of Appeals. That Court reversed the lower courts' determinations and reinstated some of the dismissed counts on March 30, 2006. Because of scheduling conflicts, the lead prosecutor was unable to proceed to trial for a period of time following that determination.

19.   No adjournment of the trial date was requested by Garson until September 2006, and that request was based on the fact, as confirmed in letters from Garson's doctors [Exhibit R], that he was undergoing chemotherapy to treat his bladder cancer, which had first been diagnosed in early 2006. After initially undergoing surgery in January of that year, the cancer had recurred, necessitating a second surgery in August 2006. Because of the debilitating effects of the chemotherapy administered after that surgery, beginning in September 2006, Garson was physically unable to withstand the rigors of a criminal trial or to assist in his defense during the latter part of 2006 and the first several months of 2007. Notwithstanding that he had changed counsel in November of 2006, Garson proceeded to trial on March 13, 2007, just four weeks after his final round of chemotherapy, and only eight weeks after the death from leukemia of his six-year-old granddaughter.

20. In addition to the papers discussed above, the People delivered to Justice Carni a copy of the entire trial transcript, consisting of more than 3600 pages, as well as copies of selected trial exhibits.[4]

21. On June 12, 2007, counsel for Garson submitted a letter [Exhibit E] as a reply to the People's opposition papers.

22. On June 14, 2007, without obtaining judicial authorization to make filings beyond the final date set by the court, the People submitted an additional letter to Justice Carni, to which Garson responded in a letter dated June 15, 2007. Both the June 14th letter submitted by the People and the June 15th letter submitted by Garson were returned to counsel by a Clerk of the Appellate Division, Second Department.

23. On June 20, 2007, Justice Carni issued a summary order [Exhibit A] denying the application for bail, and directing Garson to surrender to the Supreme Court, Kings County, for execution of his sentence. The order was unaccompanied by any opinion or explanation of its underlying rationale.

24. After initially scheduling Garson's surrender for June 26, 2007, the trial judge, on June 21, 2007, ordered that the time for his surrender would be stayed until July 5, 2007, provided that Garson was admitted to a hospital for alcohol detoxification by the following morning. That order was issued pursuant to an application by Garson's

---

[4]The People notified Garson that these materials were being delivered to Justice Carni, but did not provide a duplicate set of these materials to Garson. The trial exhibits provided to the court included excerpts of videotapes that had been edited by the prosecution for presentation to the jury. We request that the Court direct respondent to file a copy of those materials in this Court.

12

attorneys, and over the People's objection, based on the opinions of medical experts who were concerned that, in view of his age, heart condition, cancer, and other health factors, Garson would be at great risk of death or life-threatening complications if he was taken into custody prior to undergoing medically-supervised detoxification. The trial court had previously denied a defense request to adjourn sentencing to permit Garson to undergo such detoxification.

25. On the morning of June 22, 2007, Garson was voluntarily admitted to a hospital to undergo such detoxification. He was discharged from the hospital on the morning of June 28, 2007, after his attending physicians certified that, with his full cooperation, he had been medically detoxified. Although his physicians recommended, in keeping with standard medical practices, that Garson's inpatient detoxification be followed by outpatient monitoring, treatment, and counseling, the trial court's order required that Garson surrender for execution of his sentence immediately upon his release from the hospital. In compliance with that order, Garson proceeded directly from the hospital to the Supreme Court, Kings County, later that morning, and was taken into custody by the New York City Department of Correction. On July 5, 2007, he was transferred to the custody of the New York State Department of Correctional Services, and he currently remains in that Department's custody, at the Mid-State Correctional Facility in Utica County, New York, pursuant to the sentence imposed by the Supreme Court, Kings County.

26.  Because of his former position as a judge, Garson has been placed in protective custody, as a consequence of which he is only permitted outside of his cell on a limited basis, and has far fewer opportunities than other inmates to participate in prison programs that, in addition to their inherent benefits, would enable him to qualify for release or parole at an earlier date.[5] In view of his legal training, and his long and successful career as an attorney and judge, Garson is uniquely capable of assisting counsel in the preparation of his appeal. Because his current location is approximately a five-hour drive from New York City, and because attorney visiting hours are extremely limited, however, Garson's incarceration substantially impairs his ability to consult with counsel about his pending appeal. Additionally, because he is in protective custody, Garson has extremely limited access to a law library.

27.  The present petition is directed only toward the June 20, 2007, order of Hon. Edward D. Carni, Associate Justice of the Appellate Division, Second Department, denying Garson's application for bail pending appeal; it is not directed toward the underlying judgment of conviction and sentence of the Supreme Court, Kings County, the appeal of which is currently pending in the Supreme Court of the State of New York, Appellate Division, Second Department.

28.  No prior application for the present relief has been made in any federal court.

---

[5] Because he is in protective custody, the sentencing judge's expectation that Garson would be able to "do a lot of constructive things" while incarcerated (sentencing transcript [Exhibit S], p. 78) is not realistic.

14

29. For the reasons discussed in the accompanying memorandum of law, we submit (1) that the order denying bail pending appeal is subject to habeas corpus review by this Court; and (2) that the order denying bail pending appeal was arbitrary and unreasonable and, consequently, a violation of Garson's rights pursuant to the Constitution of the United States.

WHEREFORE, we respectfully petition this Court to issue a writ of habeas corpus directing that Gerald Garson be released from custody pursuant to bail in a reasonable amount pending the hearing and determination of his appeal to the Appellate Division, Second Department, and that the Court grant such other and further relief as it may deem just and proper.

Affirmed: New York, New York
       August 1, 2007

*[signature]*
JEREMY GUTMAN
*Attorney for Petitioner*
Gerald Garson

## LIST OF EXHIBITS

A    Order of Associate Justice Edward D. Carni, Appellate Division, Second Department, June 20, 2007

B    Interim Order of Associate Justice Edward D. Carni, Appellate Division, Second Department, June 5, 2007

C    Gerald Garson's Application for Bail Pending Appeal (with original exhibits), June 5, 2007

D    District Attorney's Affirmation and Memorandum in Opposition to Application for Bail Pending Appeal, June 11, 2007

E    Gerald Garson's Reply Letter in Support of Application for Bail Pending Appeal, June 12, 2007

F    Kings County Indictment Numbers 3515/2003 and 5332/2003

G    District Attorney's Bill of Particulars letters

H    Trial transcript, p. 3500

I    April 2, 2004, transcript, pp. 21-22

J    District Attorney's Press Release, April 24, 2003

K    District Attorney's Press Release, May 22, 2003

L    District Attorney's Press Release, April 19, 2007

M    *48 Hours* Synopsis

N    New York Times article, April 21, 2007

O    New York Daily News Article, April 21, 2007

P    New York Law Journal Article, April 23, 2007

Q    Garson's letter to Trial Court, May 2, 2007

R    Letters of Garson's Doctors, August-September 2006

S    June 5, 2007 Sentencing Transcript, pp. 51-83