UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
                      :

GERALD GARSON,             :

                 Petitioner,     :

         -against-              :

                      :
KENNETH PERLMAN, Superintendent,    :
Mid-State Correctional Facility,          :

                      :
               Respondent.    :
                      :
-------------------------------------------------------------- X

**COGAN**, District Judge.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ JAN 3 2008 ★

BROOKLYN OFFICE

**MEMORANDUM
DECISION AND ORDER**

07-cv-3197 (BMC)

      Petitioner, a former Justice of the New York Supreme Court, has filed this petition under 28 U.S.C. § 2254 seeking review of the state court's order denying him bail pending appeal from his conviction. I find that there is no cognizable federal claim for denial of bail pending appeal under these circumstances and that petitioner has in any event failed to exhaust his state court remedies. The petition is therefore dismissed.

## BACKGROUND

      Following a jury trial, petitioner was convicted of one count of Bribe Receiving in the Third Degree and two counts of Receiving Reward for Official Misconduct in the Second Degree. The bribery count was based on his accepting benefits from a lawyer, turned informant, upon agreement or understanding that he would provide that lawyer with favorable treatment. The misconduct counts arose from his accepting $1000 in cash and a box of cigars on separate occasions from that same lawyer. There were two other counts that the District Attorney dismissed at the end of his case and four others on which the jury acquitted petitioner. Petitioner was sentenced to one to four years on the bribery

count, and one to three years on each of the misconduct charges, all three sentences to run consecutively. Petitioner, who had been out on $15,000 bail, was remanded to custody.

Petitioner filed a notice of appeal in the Appellate Division and moved by Order to Show Cause for bail pending appeal and an immediate stay of sentence pending determination of that motion. Petitioner contended that he had meritorious claims on appeal, which he specified, and that there was no flight risk given petitioner's age (74 years old); medical problems (heart condition and recurrent bladder cancer); unfailing attendance at lengthy court proceedings; and extensive family and community ties (his wife, for example, is also a state court judge). The application for an immediate stay of sentence was orally argued before Justice Carni of the Appellate Division. He granted a temporary stay of sentence, continuing the $15,000 bail, pending submission of papers opposing the motion by the District Attorney, due within one week. The District Attorney then responded to the bail motion, submitting the 3,600 page trial transcript several days after the interim stay order, and papers in opposition to the motion several days after that.

Just over a week after the District Attorney submitted his opposing papers, Justice Carni denied the motion for bail pending appeal and vacated his earlier interim stay order. His Order did not set forth any reason for the ruling, stating only that "the motion is denied."

Petitioner commenced this habeas corpus proceeding six weeks later.

## DISCUSSION

In the instant proceeding, petitioner is not challenging his conviction, but only the denial of bail pending its appeal. The issue the petition raises, as phrased by petitioner, is whether Justice Carni's decision "arbitrarily and unreasonably deprived [petitioner] of bail pending appeal in violation of the Eighth and Fourteenth Amendments of the United States Constitution."

The petition and its supporting memorandum superimpose petitioner's view of the facts of his case over the statutory considerations for bail under New York Criminal Procedure Law § 510.30(2). These statutory factors consist of petitioner's "character, reputation, habits and mental condition;" his "employment and financial resources;" his "family ties and length of residence" in the community; his criminal record; his adherence to court schedules; the "merit or lack of merit" of his appeal; and the nature of the sentence imposed against him. Petitioner argues that all of these factors point so strongly in petitioner's favor that Justice Carni's denial of the bail motion can only be seen as arbitrary and capricious, and thus in violation of the Excessive Bail Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. Respondent opposes on the grounds that (a) petitioner has failed to exhaust his constitutional claim in state court; (b) the Supreme Court has never held that the Excessive Bail Clause of the Eighth Amendment is incorporated in the Due Process Clause of the Fourteenth Amendment, so Justice Carni's decision is not contrary to or an unreasonable application of Supreme Court authority; and (c) the facts of the case show more than arguably that bail is not warranted under the factors of § 510.30(2), so that

there is nothing arbitrary about the state court's denial of bail and no federal constitutional violation.

## I. Exhaustion

It is of course axiomatic that a petitioner must exhaust his state remedies before seeking federal habeas corpus relief. See 28 U.S.C. § 2254. Petitioner does not dispute that. Instead, the parties' disagreement devolves into a question of state law: is there any state procedure pursuant to which petitioner could raise this claim? Petitioner argues that there is not. I find that there is, or at least, it is sufficiently likely that there is that both § 2254 and principles of comity require that he should have tried.

### A. The Federal Claim was not raised in the Bail Application

In making the bail application itself, petitioner did not advance the claim that he makes here, i.e., that denial of bail would violate his rights under the federal constitution. The claim was therefore not exhausted in the bail application for purposes of federal habeas review.

The Second Circuit has been clear as to what must be done in state court to exhaust an issue for later federal review. It is not much, but it is more than petitioner did here. To exhaust his federal claim, a petitioner must fairly present it to the state court. There are several alternative ways to do this:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982) (en banc). It is not disputed that petitioner's submission to Justice Carni does not fall into any of these categories.

Petitioner has offered no reason why the constitutional claim could not have been raised in his bail application. He suggested at oral argument that the constitutional considerations were lurking behind his application, and that I should not stand on formality considering the important interests at stake. The answer to this of course is that there are always important interests at stake in a federal habeas corpus proceeding, and the law surrounding the writ strikes a careful balance between state and federal interests. As the Supreme Court has noted:

> State courts, like federal courts, are obliged to enforce federal law.
> Comity thus dictates that when a prisoner alleges that his continued
> confinement for a state court conviction violates federal law, the state
> courts should have the first opportunity to review this claim and provide
> any necessary relief. This rule of comity reduces friction between the
> state and federal court systems by avoiding the "unseem[liness]" of a
> federal district court's overturning a state court conviction without the
> state courts having had an opportunity to correct the constitutional
> violation in the first instance.

O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S.Ct. 1728, 1732 (1999) (internal citations omitted). The issue thus is not observance of formality for the sake of formality. Rather, comity requires that before I could find that a state court has so arbitrarily applied its own statute that it has violated the Constitution, petitioner must have given the state court the opportunity to consider that point. Without doing so, my intrusion into the case would go beyond any recognized application of federal habeas corpus principles.

I can see no reason why the claim could not have been raised. Petitioner's position is akin to a defendant who objects to hearsay at trial but does not object that the

hearsay violates his right to confrontation under the Sixth Amendment. In that instance, his confrontation claim is unexhausted and may not be considered in a federal habeas corpus petition. See Daye, 696 F.2d at 193 (A "defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the court on notice that the defendant claimed a violation of his constitutional right to be confronted by his accusers."). Petitioner had an obligation to alert Justice Carni to his federal constitutional claim before raising it here.

### B. Exhaustion through Collateral State Procedures

Even if there was some reason why petitioner could not have raised his federal constitutional claim in his bail application, it is possible that petitioner could have exhausted it through a state habeas corpus petition. Petitioner argues that this remedy is not available under state law, but I am not convinced.

I start with the well-established principle that if there is doubt about the availability of a state review procedure, it should be resolved in favor of requiring exhaustion. The Second Circuit has long held that "[e]ven if there were some doubt as to the availability of relief in the New York courts, we still would give its courts the first chance to review their alleged errors so long as they have not authoritatively shown that no further relief is available." U.S. ex rel. Bagley v. LaVallee, 332 F.2d 890, 892 (2d Cir. 1964). Here, the better of the argument suggests that, if there is a constitutionally protectible interest in the denial of bail pending appeal, state habeas corpus relief is available to assert it. This is true for several reasons.

First, the statutory support for petitioner's argument that no habeas relief is available in state court is the prohibition in N.Y.C.P.L. § 460.50. That statute

incorporates by reference the procedure for bail under § 510.30(2), and further provides that "[n]ot more than one application may be made pursuant to this section." N.Y.C.P.L. § 460.50(3). Petitioner contends that a state habeas petition after denial of a bail application would violate this prohibition. However, as respondent correctly points out, that statute has no bearing on the availability of state habeas corpus to challenge bail pending appeal. A writ of habeas corpus is not an application for bail. Just as the limitation to only one direct appeal of a conviction, see Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) (noting that under New York law, a criminal defendant is "entitled to one (and only one) appeal to the Appellate Division"), does not prohibit a post-conviction motion to vacate the sentence on constitutional grounds not appearing on the record, see, e.g., N.Y.C.P.L. § 444.10, so does the statutory prohibition on multiple bail applications not preclude the review of constitutional issues that may be raised by the denial of those applications through state habeas corpus.

Second, the language of the state habeas corpus statute is broad enough to procedurally encompass review of the denial of bail pending appeal. Article 70 of the New York Civil Practice Law and Rules supplies the procedural framework for all "common law or statutory writs of habeas corpus and common law writs of certiorari to inquire into detention." N.Y. C.P.L.R. 7001. Section 7010 (b) specifically addresses bail applications, stating:

> If the person detained has been denied bail, and he is not ordered discharged, the court shall direct a final judgment admitting him to bail forthwith, if he is entitled to be admitted to bail as a matter of right, or if it appears that the denial of bail constituted an abuse of discretion.

Although New York courts have rejected this provision as a means of challenging the constitutionality of a no-bail statute, see People ex rel. Hinspeter v. Senkowski, 12

A.D.3d 23, 28, 783 N.Y.S.2d 386, 389 (2d Dep't 2004), its language would seem to suggest that arbitrary denial of discretionary bail applications, which is all that petitioner is really alleging here, is squarely within its reach.

Third, although there is limited New York authority applying state habeas corpus to bail pending appeal, see, e.g., People v. McCall, 16 A.D.2d 313, 228 N.Y.S.2d 52 (2d Dep't 1962), there is no New York authority holding that it does not so apply. Moreover, it seems clear that state habeas corpus is available to challenge pretrial denials or fixing of bail that are alleged to violate due process. See generally [State] Habeas Corpus as Tool to Review Bail Decisions, 214 N.Y.L.J. 1 (Nov. 15, 1995). There are, in addition, numerous federal cases which recognize the existence of the procedure. See, e.g., Brown v. Wilmot, 572 F.2d 404, 406 (2d Cir. 1978); Miller v. Reid, 620 F.Supp. 70, 71 (S.D.N.Y. 1985); Dixon v. Thomas, No. 84 Civ. 5774, 1985 WL 1091, at *1-2 (S.D.N.Y. April 26, 1985); Beatty v. Snow, 588 F.Supp. 809, 811 (S.D.N.Y. 1984); Ellis v. Harris, No. 81 Civ. 970, 1982 U.S. Dist. LEXIS 10942, at *1 (S.D.N.Y. Jan. 13, 1982); U.S. ex rel. Carmona v. Ward, 416 F.Supp. 272, 273-76 (S.D.N.Y. 1976).

Finetti v. Harris, 609 F.2d 594 (2d Cir. 1979), which also presented a habeas petition arising from the denial of bail pending appeal and declined to require further efforts at exhaustion, is not to the contrary. Its facts were unusual and not present here. There, the clerk of the Appellate Division rejected the petitioner's state habeas petition seeking review of an order denying bail pending appeal "in the belief that such a petition may not be entertained because there is no basis for a finding of illegal detention." Id. at 598. That clerical "determination" of a lack of constitutional merit followed multiple bail applications by the petitioner in violation of state law. Noting that "the clerk's 'decision'

apparently is not appealable," id., the Second Circuit found that the clerk's action foreclosed all avenues of state review to the petitioner absent extraordinary remedies like mandamus to compel the clerk to accept the habeas petition, remedies which the Second Circuit found were too much to ask. It therefore held that the claim was exhausted, but the Second Circuit specifically limited its holding to the facts of the case. In the instant case, I see no reason to presume that the Clerk of the State Court would reject petitioner's habeas petition in this case if he attempts to file it.[1]

It seems clear that by having taken the position that state habeas corpus is an available remedy to advance a claim of the unreasonable denial of bail pending appeal, respondent would be estopped from taking a contrary position if petitioner brought such a proceeding. Comity requires that the state courts have the opportunity to consider the constitutional claim before I do.

## C. Effect of Failure to Exhaust

There are many cases in which the failure to exhaust results in a procedural bar because under state law, the petitioner has forfeited his right to go back to the state court and have the claim heard. Under such circumstances, the claim is "deemed" exhausted and the federal court will decline to hear it on the basis of the procedural bar, unless the petitioner can show cause and prejudice for failing to raise it, points which petitioner does not assert here. See St. Helen v. Senkowski, 374 F.3d 181, 183-84 (2d Cir. 2004).

---

[1] For these reasons, I respectfully disagree with those isolated federal district court decisions that found that there is no available state habeas corpus procedure in New York. See Pulaski v. Hopkins, 745 F.Supp. 882 (E.D.N.Y. 1990); Danylocke v. Dalsheim, 662 F.Supp. 961 (S.D.N.Y. 1987), aff'd without op., 842 F.2d 1287 (2d Cir. 1988). I think they extrapolate two instances of rejection of state habeas petitions into a principle of New York law that probably does not exist. In Danylocke, for example, the district court relied on a single Appellate Division Justice having denied state habeas relief in that case on the ground that it was "not available," but that decision may well have been based on the conclusion that that the denial of bail in that particular case did not rise to a level of constitutional deprivation. Moreover, unlike the present case, the petitioner in Danylocke had at least filed and obtained a ruling on his state habeas corpus petition.

The adequacy of a state procedural bar, however, is itself a question of federal law, Lee v. Kemna, 534 U.S. 362, 375, 122 S.Ct. 877, 885 (2002); Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999), and "a [state] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed by the state in question.'" Garcia, 188 F.3d at 77 (quoting Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 857 (1991)).

This is not a proper case to deem petitioner's claim procedurally barred given the absence of state court authority on whether petitioner may still raise his constitutional claims in a state habeas corpus proceeding. As noted above, state habeas is invoked, at least in the pretrial bail context, to challenge the constitutionality of bail denials or alleged unreasonably high bail, and it is not clear in such cases whether the issue was first asserted in the bail application itself. I also note that, perhaps based on the uncertainty under state law on this issue, respondent has offered to waive any claim of procedural bar in the event petitioner proceeds by way of state habeas corpus, although it is not clear if that offer remains outstanding in light of petitioner's decision to proceed with this habeas corpus proceeding notwithstanding respondent's offer. Under these circumstances, I decline to hold that petitioner's claim is procedurally barred.

## II. Other Comity Considerations

Not only would an evaluation of the merits of petitioner's constitutional claim have me considering a claim that the state courts have not been asked to consider, but there are other comity-compromising complications that such an undertaking would create. Specifically, I would have to consider the merits of petitioner's appeal under

§ 510.30(2)(a)(vii), since the likelihood of reversal is one factor under the statute, before the state courts have been given the chance to hear the appeal.

Petitioner's primary argument to Justice Carni to show the likelihood of reversal, one of the statutory factors for bail pending appeal under § 510.30(2), was that the verdict was against the weight of the evidence. However, if the case before me was a habeas corpus petition seeking review of petitioner's conviction, as opposed to bail pending appeal, that is not a ground that I could consider, for it is well established that whether a verdict is against the weight of the evidence is not an issue of constitutional dimension reviewable by federal habeas corpus. See Givens v. Burge, No. 02 Civ. 842, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003) (collecting cases); Douglas v. Portuondo, 232 F.Supp.2d 106, 116 (S.D.N.Y. 2002) ("A federal habeas court cannot address 'weight of the evidence' claims because . . . the 'weight of the evidence' argument is a pure state law claim . . . for which habeas review is not available.") (internal quotation marks and citations omitted). In the same vein, petitioner's third point on the merits to Justice Carni – that the prosecutor's arguments in opening and closing exceeded the theory disclosed in the Bill of Particulars – presented another issue wholly under state law, not cognizable on federal habeas corpus. See DiGuglielmo v. Smith, 366 F.3d 130, 136 (2d Cir. 2004). Similarly, another point on the merits petitioner made to Justice Carni – that the trial court failed to suppress videotapes because the search warrant to obtain them was invalid – raises a Fourth Amendment claim, not cognizable on federal habeas corpus review. See Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052 (1976).

Petitioner made three other points on the merits of the appeal to Justice Carni: (a) that the trial court erred in failing to give a broad enough circumstantial evidence

instruction; (b) that the trial court improperly curtailed cross-examination or impeachment of the informant; and (c) that the trial court improperly admitted certain tapes over petitioner's hearsay objection. Although some or all of these points might support federal habeas corpus relief on review of a final conviction after their exhaustion in state court, none of them were presented to Justice Carni in a way that would permit such review. They appear to have been based entirely on state law. No federal cases, nor state cases applying federal constitutional analysis, nor any provision of the U.S. Constitution were called to Justice Carni's attention. (The closest that petitioner came was on the suppression issue, when the caption of the point used the phrase "statutory and constitutional standards," but the argument mentioned no federal constitutional standards and was premised only on an alleged failure to comply with Article 700 of the N.Y.C.P.L.).

When a petitioner fails to invoke federal constitutional law to challenge his conviction in state court, federal habeas corpus relief will not lie. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991) ("federal habeas corpus relief does not lie for errors of state law"); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102 (1990) (it is "not the province of a federal habeas court to reexamine state-court determinations on state law questions"). The only mention of the federal constitution in his submission to Justice Carni was petitioner's argument that because of his medical condition, denial of bail pending appeal would constitute cruel and unusual punishment. But that is not a claim he is raising before me.[2]

---

[2] Indeed, petitioner's invocation of this portion of the Eighth Amendment suggests that there was no reason he could not have raised other federal constitutional claims.

At oral argument, petitioner attempted to minimize this problem by contending that under state law, the primary consideration is risk of flight, and that consideration of the merits of the appeal is only necessary to the extent that the state court must find that the appeal is not "palpably without merit." He therefore suggested that I needed to undertake only a limited analysis of the merits, and could similarly find a constitutional violation based on arbitrariness if I found that there was limited risk of flight and if the appeal was not palpably without merit. There are three deficiencies in this argument.

The first is that there is very limited New York authority to support a requirement of "palpably without merit" as the mandatory standard in the bail-pending-appeal context. See People v. Kern, 137 A.D.2d 862, 524 N.Y.S.2d 521 (2d Dep't 1988). Moreover, that authority is just as consistent with the courts' having exercised their discretion on the facts of the cases before them rather than establishing a mandatory standard of review. There is nothing in the language of § 510.30(2) that instructs a court how it is to weigh the various factors or that imposes a standard of review as to the merits of the appeal.

The statute applies to both pre-trial and post-conviction bail, and the provision instructing the court to consider the likelihood of reversal on appeal obviously applies only in the post-conviction context. The statute therefore allowed Justice Carni to balance the risk of flight against the merits of the appeal as he saw fit. There is no reason to assume that his ruling was not, or could not lawfully have been, based on his conclusion that the likelihood of reversal was not sufficiently substantial to warrant bail pending appeal as a matter of discretion, even taking into account what he may have concluded was a limited risk of flight.

Second, even if the primary consideration on a post-conviction bail application is risk of flight, Justice Carni's presumed determination that the risk of flight was too high to permit bail pending appeal would be a factual finding entitled to deference under 28 U.S.C. § 2254(e)(1).[3] Petitioner has not overcome the presumption of the correctness on this finding. Petitioner argued that he presents a low risk of flight considering his age, medical condition, and limited assets. The District Attorney argued that these factors show that he had nothing to lose by fleeing, and that his wife's employment gave him adequate resources to achieve that. Even if I were to disagree with Justice Carni's presumed determination against petitioner on this issue, this is not before me for *de novo* review. The determination is not so clearly in error as to overcome the presumption of correctness.

Finally, the constitutional needle that petitioner is asking me to thread is simply too small to be consistent with the interests of comity. Petitioner is asking me to find that the denial of bail was so arbitrary that it violated the Constitution, yet is also urging that I need only make a broad, non-specific finding as to the merits of the appeal, essentially suggesting that a finding of non-frivolity is sufficient to support a finding of unconstitutionality. The tension between these two poles necessary to accept petitioner's analysis is too great.

I cannot gloss over the merits of the appeal since, under the statute, that is a co-equal factor that state courts must consider as a matter of discretion. And I do not see

---

[3] I am using the phrase "presumed determination" in the same way that Appellate Division decisions rejecting claims "on the merits" without further comment are deemed to resolve federal constitutional issues. See Jimenez v. Walker, 458 F.3d 130, 139 (2d Cir. 2006). Since Justice Carni was not obligated to issue a reasoned decision, see Finetti v. Harris, 609 F.2d 594 (2d Cir. 1979), I have to presume in reviewing his decision that he considered and rejected petitioner's claim on the merits.

how I can reach issues on review of the denial of a bail application that I could not reach on review of a conviction where appeals had been properly exhausted. To do so would turn the well-established rules of habeas review on their head, and would inject federal courts into non-final state proceedings in an unprecedented manner.

## III. The Right to Challenge the Denial of Bail Pending Appeal by Habeas Corpus

Alternatively, even if petitioner's claim was exhausted and its consideration did not violate principles of comity, I would find that there is no basis to set aside Justice Carni's Order on federal habeas review.

It seems common ground between the parties that although there is no federal constitutional right to bail pending appeal, see United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095 (1987), once a state establishes procedures for such relief, the Eighth and Fourteenth Amendments limit state judges' discretion to withhold it. I am not convinced. Both parties cite the Second Circuit's decisions in Brown v. Wilmot, 572 F.2d 404 (2d Cir. 1978), and Finetti v. Harris, 609 F.2d 594 (2d Cir. 1979), as recognizing the availability of habeas corpus to challenge the denial of bail pending appeal. However, both cases merely presumed the existence of such a right. Brown's *per curiam* opinion explained it this way:

> [O]nce a state provides for bail [pending appeal], the Eighth and
> Fourteenth Amendments impose certain limitations on the state court's
> discretion to grant or refuse bail. Since we perceive no constitutional
> distinction between requiring excessive bail and denying bail altogether in
> the absence of legitimate reasons, it follows that appellant could not have
> been arbitrarily or unreasonably denied bail consistent with his
> constitutional rights.

572 F.2d at 405 (internal citation and quotation omitted).

This comment, however, was dicta, because the issue in <u>Brown</u> was whether, assuming the availability of habeas relief, a state court judge was required to state reasons for denying bail pending appeal. The <u>Brown</u> court declined to reach even that issue, finding that the petitioner had failed to exhaust his state remedies. The <u>Finetti</u> court, finding exhaustion, decided the issue left open in <u>Brown,</u> holding that there was no constitutional requirement for state judges to state their reasons for denying bail pending appeal, and that the record in the case disclosed non-arbitrary reasons for the denial of bail. But <u>Finetti</u> simply relied upon <u>Brown</u> for the assumption that federal habeas corpus was available to redress a state's alleged arbitrary application of its post-conviction bail statute, undertaking no independent analysis of that issue. Indeed, since <u>Finetti</u> found that there had been no arbitrary application of the bail statute, even its assumption that such relief would have been available had it found otherwise was dictum.

Neither <u>Brown</u> nor <u>Finetti</u> cited to Supreme Court authority for the proposition that the arbitrary application of a bail statute post-conviction constitutes an Eighth Amendment violation cognizable in federal habeas corpus. As noted below, there was none then and there is none now. <u>Brown</u> instead cited a Seventh Circuit case and two district court cases; <u>U.S. ex rel. Walker v. Twomey,</u> 484 F.2d 874, 875 (7th Cir. 1973) (per curiam); <u>Abbott v. Laurie,</u> 422 F.Supp. 976, 978 (D.R.I. 1976); and <u>U.S. ex rel. Covington v. Coparo,</u> 297 F.Supp. 203, 206 (S.D.N.Y. 1969). It bears noting that <u>Abbott</u> held that the failure of the state court to cite reasons for the denial of bail pending appeal was a *per se* violation of the Eighth and Fourteenth Amendments, a holding which <u>Finetti</u> later rejected, and that Judge Weinfeld's decision in <u>Coparo</u> involved pretrial bail, not bail pending appeal post-conviction.

Although there is an appealing syntactical symmetry to <u>Brown's</u> dicta that that

which the state giveth, it may not taketh away, at least not arbitrarily, neither <u>Brown</u> nor

<u>Finetti</u> is controlling here. This is because I am not just addressing the application of the

Constitution to the issue that petitioner has raised. I am, instead, confined by 28 U.S.C. §

2254(d)(1), which mandates that when a state court has determined the merits of a federal

constitutional claim, federal habeas relief is not available unless the state court decision

"was contrary to, or an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." This means that even if this

Court concluded, on the basis of Second Circuit authority, that Justice Carni had acted in

violation of the Eighth and Fourteenth Amendments, that conclusion, standing alone,

would not be sufficient to warrant habeas relief. Stated otherwise, the Second Circuit's

assumption in <u>Brown</u> and <u>Finetti</u> that the Eighth and Fourteenth Amendment control the

state court's discretion in post-conviction bail applications is not authoritative, neither on

this Court nor, more importantly, on the state court. Some Supreme Court authority, not

circuit or district court authority, had to at least constructively alert the state court to the

constitutional error that petitioner alleges is reflected in its decision.

At the very least, this would present petitioner with a significant hurdle were I to

consider whether the state court's denial of bail was arbitrary. The state courts are

afforded latitude when Supreme Court authority serves only to discern broad principles.

"The range of judgments that can be deemed 'reasonable' may vary with the nature of the

rule in question." <u>Serrano v. Fischer,</u> 412 F.3d 292, 297 (2d Cir. 2005) (citation omitted).

"The more general the rule, the more leeway [state] courts have in reaching outcomes in

case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 2149 (2004).

But the problem here is more fundamental. The very existence of "the rule," as these cases refer to it, is open to dispute. The Second Circuit has recently held that district courts should not rely on circuit decisions as primary authority in habeas determinations. "No principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Rodriguez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007). Yet here, only lower federal court decisions espouse the principle of constitutional law – that arbitrary application of state post-conviction bail statutes violates the Eighth and Fourteenth Amendments – upon which petitioner relies. Moreover, both Brown and Finetti are particularly poor candidates from which to attempt to carve an exception against reliance on circuit court authority in habeas cases – neither purported to rely upon or even cited a Supreme Court decision to support the availability of habeas review under the Excessive Bail Clause to post-conviction bail applications; both of their assumptions that they had such authority were dicta in light of the result they reached; and both were pre-AEDPA cases not subject to the additional limitations on habeas review that the statute now imposes.

A more detailed look at the applicability of the Eighth and Fourteenth Amendments to bail pending appeal is therefore required.

*A. Eighth Amendment*

It has been over 30 years since Judge Friendly observed that, "[a]lthough this provision of the Bill of Rights [the Excessive Bail Clause of the Eighth Amendment] has

not yet been held by the Supreme Court to be one of those made applicable to the states through the Fourteenth Amendment, we entertain little doubt that it will be." U.S. ex rel. Goodman v. Kehl, 456 F.2d 863, 868 (2d Cir. 1972). Yet that day has still not come. Even mere references to the issue by the Supreme Court have been few and far between. At the time of Judge Friendly's comment in Kehl, the Supreme Court, in a case wholly inapposite to the issue here, had noted in dictum that lower courts had "assumed" that the Excessive Bail Clause was applicable against the states. Schlib v. Kuebel, 404 U.S. 357, 92 S.Ct. 479 (1971) (dismissing civil rights class action alleging that state's retention after acquittal of 1% of pretrial bail when posted by bond did not offend equal protection or due process clause). Even earlier, in Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1 (1951), the Supreme Court held habeas corpus unavailable as an initial remedy to reduce pretrial bail on a federal indictment, stating that the proper procedure was a motion to reduce bail, and doing no more than implying that, if the bail was excessive and the Order sustained through direct appeal, habeas corpus might then lie. After Kehl, the Court revisited the issue of pretrial bail in United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095 (1987), upholding the Bail Reform Act, 18 U.S.C. § 3142, against an Eighth Amendment challenge that the setting of bail could never encompass reasons beyond assuring appearance, a position that it rejected.

Even assuming that these occasional and disconnected references by the Supreme Court would be sufficient to notify a state court that a pretrial bail consideration could be subject to federal habeas review under an incorporated Eighth Amendment, none of those cases dealt with bail pending appeal. They all applied to pretrial bail. There is no reason

to presume that the scattered references above are transferable to the post-conviction context, and considerable reason to conclude that they are not.

First, all of the cases rely upon the presumption of innocence, see, e.g., Stack, 342 U.S. at 4, 72 S.Ct. at 4 ("[u]nless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning"); Salerno, 481 U.S. at 755, 107 S.Ct. at 2105 ("[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). This consideration is obviously absent in post-conviction bail applications. The fact that there is no constitutional right to bail means that liberty pending appeal is not the norm for one convicted of a crime.

Second, the Supreme Court has observed that "[t]he bail clause [in the Eighth Amendment] was lifted with slight changes from the English Bill of Rights Act." Carlson v. Landon, 342 U.S. 524, 545, 72 S.Ct. 525, 536-37 (1952), and the similarity of the language in that Act to the Eighth Amendment confirms that conclusion. See [English] Bill of Rights Act, 1 W. & M., Sess. 2, ch. 2, § 1, 2(10) (1689). However, the right to bail under English law at the time of the adoption of the Bill of Rights was limited to the pretrial context. Blackstone confirms, in his discussion of bail, that "bail is ousted by statute . . . [for] prisoners convicted of particular offenses; for then such imprisonment without bail is part of their sentence and punishment." IV William Blackstone, Commentaries on the Laws of England 295 (1769). Another commentator similarly concludes that in the English courts of that era, "[a]lthough the party may have a right of appeal, he cannot be bailed during the pendency of such appeal, as an appeal does not suspend the execution of a judgment which it is brought to reverse."

Petersdorff, <u>A Practical Treatise on the Law of Bail in Civil and Criminal Proceedings</u> 487 (John S. Littell 1835).

In other words, there was no right to bail pending appeal when the framers drafted the Bill of Rights. It thus appears that when they included the Excessive Bail Clause in the Eighth Amendment, they were addressing pre-trial bail, and the Excessive Bail Clause, if it is applicable to the states at all, does not address and therefore does not encompass bail pending appeal.

*B. Fourteenth Amendment*

This leaves us, then, with the argument that Justice Carni had to discern that the Fourteenth Amendment's due process requirement, with no other incorporated federal constitutional provision and no Supreme Court authority, imposed a constitutional obligation upon him, reviewable by federal habeas corpus, to make a non-arbitrary determination as to bail pending appeal. I think that is too much to ask. N.Y.C.P.L. § 510.30(a) is, after all, a state statute, not a matter of federal right. There are a number of state criminal procedural and substantive statutes, the outright violation of which do not give rise to due process claims. See <u>e.g.</u>, <u>Bradley v. Burge</u>, No. 06 Civ. 0040, 2007 WL 1225550, at *7 (S.D.N.Y. April 19, 2007) (federal habeas not available to assert violation of N.Y. Jud. L. § 295, which requires verbatim transcript of proceedings); <u>McCullough v. Bennett</u>, 438 F.Supp.2d 185, 188-89 (W.D.N.Y. 2006) (alleged violation of N.Y.C.P.L § 710.30, which specifies notice that prosecution must give in order to introduce defendant's statement to police at trial, does not present an issue cognizable on federal habeas corpus); <u>Davis v. Greiner</u>, No. 02 Civ. 6802, 2003 WL 23198786, at *12 (E.D.N.Y. Oct. 30, 2003) (rejecting federal habeas as means to challenge to alleged

violation of N.Y. Penal L. § 70.25(2), which requires concurrent sentences for convictions arising out of the same criminal conduct). Only if the failure to comply with the state court statute violates a defendant's fundamental right to a fair trial or other federal constitutional rights will the claim support federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002).

Petitioner's claim for bail pending appeal presents neither an issue of fundamental right, as both sides agree that there is no right to post-conviction bail, nor is it relevant to his right to a fair trial. It is not even sufficiently related to the fairness of his appeal to give rise to a due process concern, as it is always easier for a convicted defendant to work on his appeal while out of custody but most manage to prepare it while in custody. I do not mean to minimize the burden on petitioner of remaining in custody pending appeal, particularly considering his age and medical condition. But it is all too easy to characterize a state court's denial of bail pending appeal as "arbitrary" and thus, under petitioner's theory, trigger federal review. The question is whether there is a constitutionally protected interest here.

There is no claim here that petitioner's procedural due process rights have been violated. State law sets out the procedure for considering an application for bail pending appeal, and the District Attorney and State Court complied with that process. See N.Y.C.P.L. §§ 460.50, 510.20, 530.50. Petitioner had notice of the State's opposition to his motion for bail and he had a hearing on it before a judge.

Petitioner's claim is that he has been deprived of substantive due process because he had a protected liberty interest in bail pending appeal. The *sine qua non* of a

constitutionally protected interest is a reasonable expectation on the part of a citizen that he has certain rights protected by law. Section 510.30(2) thus could be the basis for a claim for violating substantive due process if it created a protectible liberty interest. But the parties' acknowledgment that there is no constitutional right to bail recognizes that the statute does not create such an interest. Bail pending appeal is a matter committed to the discretion of the court. "If he applied for bail, and bail was denied, the action of the court was not the subject of review, because the granting or refusing bail was made by the statute a matter of discretion." McKane v. Durston, 153 U.S. 684, 687, 14 S.Ct. 913, 914 (1894) (denying writ of habeas corpus). The existence of a "right" to bail pending appeal stands similarly to the existence of a "right" to parole, which the Second Circuit has held is not subject to due process protection:

> In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme. Neither the mere possibility of release, nor a statistical probability of release, gives rise to a legitimate expectancy of release on parole.
>
> The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release.
>
>                     ***
>
> Thus, "[i]t is apparent that New York's parole provisions . . . do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist . . . . [N]o entitlement to release is created [by the parole provisions]." Accordingly, plaintiffs have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable.

Barna v. Travis, 239 F.3d 169, 170-71 (2d Cir. 2001) (citations omitted). See also Marvin v. Goord, 255 F.3d 40 (2d Cir. 2001).

I think petitioner essentially concedes, and even if not, I hold that § 510.30(2) cannot be viewed as giving a prisoner a legitimate expectancy of release. It simply lists a

series of factors for the state court to consider in exercising its discretion on whether to grant bail pending appeal. It thus stands in contrast to other New York statutes that mandate bail in particular circumstances. See e.g. N.Y.C.P.L. § 530.20(1). Those statutes give rise to rights protected under the Due Process Clause. Section 510.30(2) does not. There is no "entitlement" under the statute, i.e., no vesting of a reasonable expectation of right under state law. See Boothe v. Hammock, 605 F.2d 661, 663 (2d Cir. 1979).

Notwithstanding the clear language in Barna, a number of district courts have suggested that the lack of a protectible liberty interest does not mean that parole applications can be denied arbitrarily without being subject to challenge under the Due Process Clause – although these cases always find a lack of arbitrary action, see, e.g., Cartagena v. Connelly, No. 06 Civ. 2047, 2006 WL 2627567, at *7 (S.D.N.Y. Sept. 14, 2006); Tatta v. Miller, No. 05 Civ. 1205, 2005 WL 2806236, at *4 (E.D.N.Y. Oct. 27, 2005); Romer v. Travis, No. 03 Civ.1670, 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003) – just as Brown and Finetti stated in dictum that bail pending appeal cannot be denied arbitrarily. I respectfully disagree with the assumption in these district court decisions because I think the lack of a protectible liberty interest means precisely that.

The language in these decisions can be explained on two bases, first, because it is not instinctive to the law to adopt a standard that tolerates arbitrary action, especially when it is the power of the state, exercised over the imprisonment of individuals, which is at issue, and, second, because, since these decisions found that the denial was non-arbitrary in any event, the assumption that the claim was subject to analysis as a due process violation was dictum. In addition, even where there is no protected liberty

interest in receiving a change of status, there may be a protected liberty interest in the opportunity to receive one. That is solely a matter of procedural due process, which again is not at issue here.

The conclusion seems inescapable that if there is no protectible right to parole, or to bail pending appeal, then by definition, there is no "right" that can be arbitrarily denied as long as the state court decision comports with procedural due process. In this way, the inquiry-ending effect of a determination that no liberty interest exists is similar to the determination in property interest civil rights cases that if the state has not created a reasonable expectation of a property right, there can be no due process violation for the confiscation or denial of the alleged right. See, e.g., Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577-79, 92 S.Ct. 2701, 2709 (1972) (holding that plaintiff did not have a property interest in continued employment protected by Fourteenth Amendment and explaining that to have a protectible property interest a party must "have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.)"; RRI Realty Corp. v. Inc. Vill. of Southampton, 870 F.2d 911, 919 (2d. Cir. 1989) (finding that plaintiff did not have property interest protectible by the Due Process Clause because plaintiff did not have entitlement to land use permit when review board had discretion in granting permit).

Petitioner contends that three Supreme Court cases support his argument that there is a protectible liberty interest in bail pending appeal, but their holdings actually

provide good contrast to show why no liberty interest exists here.[4]  In Morrissey v. Brewer, 408 U.S. 471, 482, 92 S.Ct. 2593, 2601 (1972),  the Supreme Court found that a parolee – not someone eligible for parole, but rather someone who has actually been granted parole – has a reasonable expectation of *remaining* at liberty, a substantive right which could not be withdrawn without procedural due process.  The parolee in Morrissey had been released from prison after an evaluation and although his freedom was subject to restrictions, he had a reasonable expectation that he would remain free unless and until his parole was revoked.  His liberty "include[d] many of the core values of unqualified liberty and its termination [would] inflict[] a 'grievous *loss*' on the parolee . . . ."  Id. at 482, 92 S.Ct. at 2601 (emphasis added).

Similarly, in Gagnon v. Scarpelli, 411 U.S. 778, 781-82, 93 S.Ct. 1756, 1759-60 (1973), the Supreme Court found that the revocation of probation without due process – again, not the *consideration* of probation but its *revocation* from one to whom it had already been granted – was also a deprivation of a protectible liberty interest.  Petitioner here is in just the opposition position.  He has been convicted and nothing in state law gave him the reasonable expectation that he would remain free pending appeal once that occurred.[5]

_____

[4] It is no coincidence that petitioner's extensive moving brief before me, like his submission to Justice Carni, contained no reference to the U.S. Constitution, nor to any Supreme Court decision, nor did it assert a claim that Justice Carni's decision was contrary to or an unreasonable application of Supreme Court authority.  Only when respondent, in his opposing papers, pointed out the failure to exhaust or to meet the standard of review under the AEDPA did petitioner, in his reply brief, refer to Supreme Court authority.  As shown below, these cases not only fail to help petitioner, but they underscore the absence of any federal claim here.

[5] At oral argument, petitioner asserted that since Justice Carni had stayed his sentence for a week, he had acquired a reasonable expectation of liberty.  I do not agree.  A brief stay of sentence pending consideration of a bail application is fundamentally different than a state's grant of probation or parole; it does not create any protectible expectation about what the Court's ultimate disposition of the bail application will be.

In the third Supreme Court case relied on by petitioner, <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221-24, 125 S.Ct. 2384, 2393-95 (2005), inmates in a state maximum security prison challenged the state's policy governing placement in maximum security. The Supreme Court found a protectible liberty interest in avoiding transfer to maximum security because it involved atypical and significant hardship relative to ordinary prison. The case similarly stands in contrast to the interest at issue here. Prisoners should reasonably expect that they will not be transferred from normal to maximum security without due process. Arbitrarily transferring someone from normal security to maximum security deprives someone of liberty the same way as arbitrarily imprisoning a free person. The existence of a reasonable expectation of liberty – even from a starting point of reduced liberty, as in <u>Wilkinson</u> – is different from the expectation of bail pending appeal.[6]

For these reasons, I find that there is no constitutionally protected interest raised in this case and thus habeas corpus relief does not lie.

---

[6] It should be noted that although the Supreme Court found a protectible liberty interest in <u>Morrissey</u>, <u>Gagnon</u>, and <u>Wilkinson</u>, the ultimate right being asserted was one of procedural due process, which, as noted above, is not the case here.

## CONCLUSION

The petition is dismissed. The Clerk is directed to enter judgment in favor of respondent. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253(b)(2).

**SO ORDERED.**                                        /s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
       January 2, 2008